**UNITED STATES BANKRUPTCY COURT**　　　　　**NOT FOR PUBLICATION**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
In re:                                              :
                                                    :
Orly Genger,                                        :        Case No. 19-13895 (JLG)
                                                    :        Chapter 7
                        Debtor.          :
-------------------------------------------------------------x
Deborah J. Piazza, as Successor Chapter 7 Trustee   :
of the Bankruptcy Estate of Orly Genger,            :
                                                    :
                        Plaintiff,       :        Adv. P. No. 21-01172 (JLG)
                                                    :
v.                                                  :
                                                    :
Zeichner Ellman & Krause LLP,                       :
                                                    :
                        Defendant.       :
-------------------------------------------------------------x

### MEMORANDUM DECISION ON MOTION FOR AN ORDER PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

<u>**APPEARANCES**</u>:

TARTER KRINSKY & DROGIN LLP
*Attorneys for Deborah J. Piazza,*
*Chapter 7 Trustee*
1350 Broadway, 11th Floor
New York, New York 10018
By:　　Rocco A. Cavaliere
　　　　Deborah J. Piazza

HUGHES HUBBARD & REED LLP
*Attorneys for ADBG LLC*
One Battery Park Plaza
New York, New York 10004
By:　　Christopher Gartman
　　　　Christopher Kiplok
　　　　Carl Mills

ERIC HERSCHMANN
*Appearing Pro Se*
210 Lavaca Street, #1903
Austin, Texas 78701

KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, New York 10019
By:     Andrew R. Kurland

EMMET, MARVIN & MARTIN, LLP
*Attorneys for D&K Limited Partnership and*
*TPR Investment Associates, Inc.*
120 Broadway
New York, New York 10271
By:     Thomas A. Pitta
        John Dellaportas

POLLOCK COHEN LLP
*Attorneys for Michael Oldner as Trustee*
*on Behalf of the Orly Genger 1993*
*Trust and Recovery Effort Inc.*
111 Broadway, Suite 1804
New York, New York 10006
By:     Adam Pollock

LAW OFFICE OF MAX RODRIGUEZ PLLC
*Counsel for Michael Oldner as Trustee*
*on Behalf of the Orly Genger 1993*
*Trust and Recovery Effort Inc.*
12 East 49th Street, 11th Floor
New York, New York 10017
By:     Max Rodriguez

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

### Introduction[1]

Orly Genger ("Orly" or the "Debtor") is the chapter 7 debtor herein. Prior to the Petition Date, the law firm of Zeichner Ellman & Krause LLP ("ZEK") represented her in a number of lawsuits in state and federal courts. Deborah J. Piazza (the "Trustee") is the successor chapter 7 trustee, and the legal representative of Orly's estate. In that capacity, she investigated ZEK's conduct as Orly's counsel in those matters.

In July 2021, the Trustee commenced this adversary proceeding against ZEK (the "Adversary Proceeding"). In her one-count complaint (the "Complaint"),[2] the Trustee seeks damages occasioned by ZEK's alleged malpractice. The Complaint focuses on ZEK's activities in three lawsuits. In the 2008 and 2014 Actions, ZEK represented Orly as plaintiff and defendant, respectively, in her individual capacity. In the 2009 Action,[3] ZEK represented Orly, as plaintiff, asserting damage claims against Sagi Genger, who is Orly's brother, and others. She did so on her own behalf and derivatively on behalf of the Orly Genger 1993 Trust (the "Orly Trust") and, through the Orly Trust, double-derivatively on behalf of D & K Limited Partnership (the "D&K LP").

Before the Court is the Trustee's motion (the "Motion")[4] made pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for the entry of an order

---

[1] Capitalized terms not defined in the Introduction have the meanings ascribed to them below.

[2] *See Complaint*, AP ECF No. 1. References to "AP ECF No.__" are to documents filed on the electronic docket of this adversary proceeding, *Piazza v. Zeichner Ellman & Krause LLP*, Adv. Pro. No. 21-1172 (JLG). Citations to "ECF No. __" refer to documents filed on the electronic docket of the Debtor's lead case, Case No. 19-13895 (JLG)

[3] The Court refers to these actions collectively as the "Prepetition Actions."

[4] *Chapter 7 Trustee's Motion for an Order Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (A) Approving Settlement Agreement Between Chapter 7 Trustee and Zeichner Ellman & Krause LLP and (B) Granting Related Relief*, AP ECF No. 19.

3

approving her agreement with ZEK to settle the Adversary Proceeding (the "Settlement Agreement").[5] The Debtor is not a party to the Settlement Agreement.

D&K LP filed a limited objection to the Motion (the "D&K Objection")[6] and a sur-reply in support of the objection (the "D&K Sur-Reply").[7] TPR Investment Associates, Inc. ("TPR") joined the D&K Objection (the "TPR Joinder").[8] The Orly Trust and Recovery Effort Inc. ("REI," together with the Orly Trust, D&K LP, and TPR, the "Objecting Parties") filed a limited statement and objection to the Motion (the "Orly Trust/REI Objection,"[9] together with the D&K Objection, the D&K Sur-Reply, and the TPR Joinder, the "Objections").

The terms of the Settlement Agreement include a cash payment of $995,000 (the "Settlement Cash Proceeds"). The Objecting Parties do not challenge the Trustee's business judgment in agreeing to the Settlement Agreement or dispute that the agreement is "fair and equitable" and in the best interests of Orly's estate. Instead, they contend that D&K LP and the Orly Trust are the real parties in interest in respect of the derivative claims in the 2009 Action, and that only they can settle the malpractice claims stemming from those claims. They maintain that the Court cannot approve the Settlement Agreement unless they ratify it, and that they will do so,

---

[5] The Settlement Agreement is annexed as Exhibit A to the Motion.

[6] *D&K Limited Partnership's Limited Objection to Chapter 7 Trustee's Motion for an Order Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (a) Approving Settlement Agreement Between Chapter 7 Trustee and Zeichner Ellman & Krause LLP and (B) Granting Related Relief,* AP ECF No. 22.

[7] *D&K Limited Partnership's Reply in Further Support of Its Limited Objection to Chapter 7 Trustee's Motion for an Order Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (A) Approving Settlement Agreement Between Chapter 7 Trustee and Zeichner Ellman & Krause LLP and (B) Granting Related Relief,* AP ECF No. 28.

[8] *Joinder of TPR Investment Associates, Inc. to D&K Limited Partnership's Limited Objection to Chapter 7 Trustee's Motion for an Order Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (A) Approving Settlement Agreement Between Chapter 7 Trustee and Zeichner Ellman & Krause LLP and (B) Granting Related Relief,* ECF No. 656.

[9] *Limited Statement and Objection of the Orly Genger 1993 Trust and Recovery Effort Inc. to Chapter 7 Trustee's Rule 9019 Motion to Approve the Proposed Settlement with Zeichner Ellman & Krause LLP,* AP ECF No. 24.

provided the proceeds are allocated across the Prepetition Actions, and among the estate, D&K LP
and the Orly Trust. D&K LP asserts that the alleged damages from the claims brought on behalf
of D&K LP in the 2009 Action dwarf any damage claims that the Debtor may assert individually
in those actions. D&K LP asserts that it is entitled to the lion's share of the Settlement Cash
Proceeds.

The Trustee filed a reply to the Objections (the "Reply").[10] Eric Herschmann
("Herschmann") and Kasowitz Benson Torres LLP ("KBT") filed a joint statement in support of
the Motion (the "Herschmann/KBT Statement").[11] ADBG LLC ("ADBG," together with
Herschmann and KBT, the "Supporting Parties") filed a statement in support of the Motion and in
response to the Objections (the "ADBG Statement").[12] The Trustee and ZEK object to the
allocation of the Cash Settlement Proceeds across the Prepetition Actions and to the payment of
any portion of the proceeds to D&K LP or the Orly Trust. The Trustee and the Supporting Parties
ask the Court to approve the Settlement Agreement and to overrule the Objections.

The Court heard arguments on the Motion. For the reasons set forth below, the Court finds
that the Settlement Agreement is fair and equitable and is in the best interests of the estate. It does
not fall below the lowest point in the "range of reasonableness." However, the Settlement
Agreement purports to settle malpractice claims against ZEK stemming from its prosecution of
derivative claims in the 2009 Action. These claims do not belong to the estate, and the Trustee

---

[10] *Trustee's Reply to (I) Limited Objection of D&K Limited Partnership and (II) Limited Statement and Objection of the Orly Genger 1993 Trust and Recovery Effort Inc. to Chapter 7 Trustee's Motion to Approve Settlement with Zeichner Ellman & Krause LLP*, AP ECF No. 25.

[11] *Statement of Eric Herschmann and Kasowitz Benson Torres LLP in Support of Trustee's Rule 9019 Motion to Approve Settlement*, AP ECF No. 26.

[12] *ADBG LLC's Statement in Support of the Chapter 7 Trustee's Proposed Settlement with Zeichner Ellman & Krause LLP and in Response to Objections Thereto,* AP ECF No. 27.

lacks standing to settle them. On that basis, the Court will not approve the Trustee's entry into the Settlement Agreement and denies the Motion.

## Jurisdiction

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Background

### Voluntary Petition and Initial Proceedings

On July 12, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Texas (the "Texas Court"). On July 12, 2019, Ron Satija, Esq. was appointed as the chapter 7 trustee of the Debtor's estate. On August 25, 2019, Mr. Satija held and closed the section 341(a) meeting of creditors. By order entered on November 7, 2019, the Texas Court transferred this case to this Court.[13] On December 11, 2019, Deborah J. Piazza was appointed as the successor chapter 7 trustee herein.

### ZEK Proof of Claim

On December 6, 2019, ZEK filed a proof of claim asserting an unsecured claim against the Debtor in the sum of $488,310.98 (the "ZEK Proof of Claim").[14]

---

[13] *See Order Granting Motion to Transfer Case Out of District*, ECF No. 168.

[14] *See* Claims Register, Claim No. 3.

**The Adversary Proceeding**

The Trustee alleges that ZEK represented Orly in various family litigations from 2009 to January 2017, both as plaintiff and defendant. Complaint ¶¶ 7, 21. During this period, ZEK filed several lawsuits on Orly's behalf, including *Orly Genger v. Sagi Genger*, Index No. 100697/2008 ("2008 Action"); *Orly Genger, et al. v. Dalia Genger, et al.*, Index No. 109749/2009 ("2009 Action"); *Arie Genger et al. v. Sagi Genger et al.*, Index No. 651089/2010 ("2010 Action"); and served as defense counsel in *Sagi Genger v. Orly Genger*, S.D.N.Y. Case No. 14-cv-5683 ("2014 Action"). *Id.* ¶¶ 8, 21.

In January 2015, KBT began representing Orly in a limited capacity for the 2008 Action's bench trial, while ZEK continued as co-counsel until January 2017. *Id.* ¶ 9. The Trustee contends that ZEK received millions of dollars in fees for its services, which included formulating and executing litigation strategies, drafting complaints, developing arguments for dispositive motions, and managing discovery. *Id.* ¶¶ 7, 11.

According to the Trustee, KBT's research into the Genger litigations revealed significant flaws in ZEK's strategies and decisions—errors that a reasonably prudent attorney should have avoided and that allegedly caused Orly damages. *Id.* ¶¶ 11-12. The Trustee cites the Prepetition Actions as evidence of ZEK's purported malpractice, echoing KBT's concerns about ZEK's representation. *Id.*

*2008 Action*

In the 2008 Action, ZEK represented Orly, individually, asserting a claim against Sagi for loss of an ownership interest in a family-owned Canadian real estate venture. Motion ¶ 25. The Trustee contends that ZEK (i) failed to claim damages relating to Sagi's payment to himself of certain "consulting fees" and other expenses, which, the Trustee alleges, severely handicapped the

Debtor's ability to prove the full extent of Sagi's fraud, and (ii) erroneously agreed to a bench trial and to bifurcate the trial of liability and damages. *Id.* She also complains that ZEK failed to pursue sufficient discovery so that Orly could prove the full extent of damage she suffered as a result of Sagi's alleged fraud. Complaint ¶ 14. She says that ZEK "failed to conduct discovery any reasonable similarly situated lawyer would have recognized would be necessary for Orly to be able to prove the full extent of her damage caused to her by Sagi's misconduct." *Id.* ¶ 24.

### 2009 Action

In the 2009 Action, Orly, acting in her individual capacity, and derivatively on behalf of the Orly Trust and, in turn, double-derivatively on behalf of D&K LP, sued Sagi and others. Orly sought damages occasioned by Sagi's alleged misconduct in connection with TPR Investment Associates, Inc. ("TPR"), a Genger family holding company that Sagi allegedly controlled. The Trustee asserts that although Sagi and Orly owned equal portions of TPR, Sagi improperly paid himself millions of dollars from TPR, while distributing virtually nothing to Orly. *Id.* ¶ 13. She says that alleged misconduct gave rise to claims against Sagi that may have been worth millions of dollars to Orly, but that ZEK failed to pursue them (the "Sagi Claims"). *Id.* She complains that, instead, ZEK focused on other claims against Sagi which led to a finding in the 2009 Action that Sagi had breached his fiduciary duties, but yielded no damages. *Id.* The Trustee asserts that in failing to assert the Sagi Claims, ZEK committed malpractice because those claims are now time-barred and any reasonable similarly situated lawyer would have would have timely asserted them. *Id.* ¶ 23.

### 2014 Action

In the 2014 Action, ZEK defended Orly against Sagi's claims for indemnification related to his payment of their mother Dalia's lifestyle support demands. *Id.* ¶ 15. The Trustee complains

that ZEK failed to conduct any discovery in the case, specifically noting its failure to depose Dalia. *Id.* When Sagi moved for summary judgment, ZEK allegedly neglected to seek relief under Federal Rule of Civil Procedure 56(d) to obtain necessary discovery. *Id.* Consequently, Sagi prevailed, resulting in a judgment against Orly for hundreds of thousands of dollars. *Id.*

The Trustee further alleges that in 2017, Sagi, in collaboration with Dalia, initiated another federal case, naming Orly as a third-party defendant. *Id.* Sagi relied on res judicata from the 2014 Action to again move for summary judgment. *Id.* Despite KBT's "vigorous[]" attempts to obtain discovery to challenge the claim, Sagi succeeded in obtaining summary judgment. *Id.* The Trustee contends that the federal court rejected KBT's efforts based on its prior decision in the 2014 Action, where ZEK had led the litigation with what the Trustee characterizes as a "negligent strategy of failing to obtain any discovery." *Id.*

The Trustee asserts that in conducting the Prepetition Actions, ZEK "failed to exercise that degree of care, skill and diligence commonly possessed and exercised by a diligent professional in the legal community." Complaint ¶ 22. She maintains that ZEK's "acts, omissions and conduct" proximately caused Orly's damages, which are "no less than many millions of dollars." *Id.* ¶¶ 26-27.

## ZEK's Motion to Dismiss Complaint

ZEK filed a motion to dismiss the Complaint (the "ZEK Motion").[15] The gravamen of the motion is that the malpractice claim is barred by New York's three-year statute of limitations, and,

---

[15] *Defendant Zeichner Ellman & Krause LLP's Motion to Dismiss the Trustee's Complaint*, AP ECF No. 6.

in any event, the complaint fails to state a claim against ZEK. ZEK Motion at 13-41. The Trustee

filed an objection to the ZEK Motion.[16] ZEK replied to the objection.[17]

## **The Mediation and Settlement**

Prior to the hearing scheduled on the ZEK Motion, the Trustee and ZEK engaged in

extended discussions about settlement, ultimately agreeing to attempt to reach agreement through

mediation. Motion ¶ 29. Thereafter, the parties proceeded before the Honorable Allan L. Gropper

(Ret.), as mediator (the "Mediator").[18] Following a day-long but inconclusive mediation session,

the parties continued to pursue settlement efforts with occasional further assistance from the

Mediator. *Id.* ¶ 30. Ultimately, the Mediator informed counsel that he was prepared to make a

"mediator's proposal," shortly after which the parties reached an agreement, the terms of which

are reflected in the Settlement Agreement. On April 11, 2024, the Trustee, on behalf of the

Mediator, submitted the Mediator Report. *Id.*[19]

The Settlement Agreement contemplates a full resolution of all claims by and between

Orly's estate and ZEK. The key components of the agreement are as follows:

- Within 30 days of entry of the Effective Date (as defined in the Settlement
  Agreement), ZEK shall pay the Trustee $955,000. Settlement Agreement ¶
  2(a).

- Within 10 days of entry of the Effective Date, ZEK shall withdraw the ZEK
  Proof of Claim. *Id.* ¶ 2(b).

---

[16] *Plaintiff's Memorandum of Law in Support of Opposition to Defendant's Motion to Dismiss Complaint,* AP ECF No. 10.

[17] *Reply Memorandum of Law in Further Support of Zeichner Ellman & Krause LLP's Motion to Dismiss the Trustee's Complaint,* AP ECF No. 11.

[18] *Stipulation and Consent Order (I) Authorizing Mediation, (II) Appointing Allan Gropper as Mediator, and (III) Authorizing the Trustee to Pay Administrative Expenses Associated with the Mediation in Adversary Proceeding,* AP ECF No. 16.

[19] *Report of Mediator*, AP ECF No. 18, 21.

- ZEK, and the Trustee on behalf of the Debtor's estate, shall exchange Mutual Releases for any and all claims that could otherwise be brought against the other (defined as "Released Claims").[20] Settlement Agreement ¶¶ 7(a)-(c). The Released Claims include (i) claims relating to, arising from, or concerning any representation by ZEK and ZEK Lawyers[21] on behalf of the Debtor individually or as a beneficiary of the Trust; and of the Trust individually or as limited partner of D&K LP; and (ii) claims asserted in, arising from, or concerning the subject matter of the Adversary Proceeding. *Id.* ¶ 7(b).

- The Mutual Releases and other terms of the Settlement Agreement will not be construed to release any claims or defenses that have been asserted by the plaintiff in the action styled as *Recovery Effort Inc. v. Zeichner Ellman & Krause LLC, et al.*, 19-cv-05641 (S.D.N.Y.) (the "REI Action"). *Id.* ¶¶ 3, 7(d).

## **The Motion**

The Trustee has weighed the potential risks and costs of continued litigation against the benefits of a guaranteed settlement, concluding that the proposed agreement serves the bankruptcy estate's best interests. Motion ¶¶ 32-48. She emphasizes that negotiations with ZEK were conducted at arm's length, a factor supporting the fairness of the Settlement Agreement. *Id.* ¶ 33.

In evaluating the settlement, the Trustee acknowledges the inherent risks in legal malpractice cases. *Id.* ¶ 44. ZEK had raised several defenses, including statute of limitations and failure to state a claim, which could potentially result in dismissal with prejudice. *Id.* ¶ 45. Given these litigation risks, the Trustee determined that securing a $955,000 cash payment and the withdrawal of ZEK's $488,310.98 claim was preferable to continued litigation. *Id.* ¶¶ 31, 47.

The settlement also aims to avoid substantial legal fees and costs associated with discovery and prosecution of the Adversary Proceeding. *Id.* ¶ 47. The Trustee estimates that these expenses

---

[20] The Trustee and ZEK are both "Releasee" and "Releasor" under the agreement. Settlement Agreement ¶ 7(a).

[21] The term "ZEK Lawyers" means "any attorney currently or formerly a member of, or affiliated or associated with ZEK." Settlement Agreement ¶ 7(b).

could exceed $150,000. *Id.* By reaching this agreement, the estate secures a guaranteed payment while avoiding the uncertainties and expenses of protracted litigation. *Id.*

## Legal Standard

Bankruptcy Rule 9019(a) provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Bankruptcy courts favor the resolution of disputes through settlements, "as they minimize costly litigation and further parties' interests in expediting the administration of the bankruptcy estate." *In re Motors Liquidation Co.*, 555 B.R. 355, 364-65 (Bankr. S.D.N.Y. 2016); *see also Motorola, Inc. v. Off. Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 455 (2d Cir. 2007) (observing that "settlements . . . help clear a path for the efficient administration of the bankrupt estate, including any eventual plan of reorganization"); *In re Chemtura Corp.*, 439 B.R. 561, 595 (Bankr. S.D.N.Y. 2010) ("As a general matter, settlements or compromises are favored in bankruptcy and, in fact, encouraged.").

"Before a court may approve a settlement, it must find that it is fair and equitable, and in the best interests of the estate." *In re Ditech Holding Corp.*, No. 19-10412, 2019 WL 3294684, at *6 (Bankr. S.D.N.Y. July 19, 2019) (collecting cases). To make that determination, the Court must apprise itself of all facts necessary for an informed and objective opinion of the probabilities of ultimate success should the claim be litigated, and "the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." *In re Matlin Patterson Glob. Opportunities Partners II L.P.*, 644 B.R. 418, 426 (Bankr. S.D.N.Y. 2022) (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)).

In so doing, a court need not decide the numerous issues of law and fact raised by a compromise or settlement, "but must only 'canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness.'" *In re Adelphia Commc'ns Corp.*, 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005) (quoting *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983)). "The decision to approve or deny a particular settlement involving a bankruptcy estate lies within the discretion of the bankruptcy court." *In re Genever Holdings, LLC*, No. 20-12411, 2021 WL 3919826, at *8 (Bankr. S.D.N.Y. Sept. 1, 2021).

## Analysis

## Whether the Settlement Is Fair and Equitable and in the Best Interests of the Estate

In considering whether to approve a proposed settlement, "[i]t is not necessary for the court to conduct a 'mini-trial' of the facts or the merits underlying the dispute." *In re Adelphia Commc'ns Corp.*, 327 B.R. at 159. Rather, the court must make an informed and independent judgment as to whether a proposed compromise is "fair and equitable" after apprising itself of "all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated." *TMT Trailer Ferry, Inc.,* 390 U.S. at 424. The factors that courts in the Second Circuit weigh in determining whether a proposed settlement is "fair and equitable" are:

> (1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in collecting on the judgment; (3) "the paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the proposed settlement"; (4) whether other parties in interest support the settlement; (5) the "competency and experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court judge" reviewing, the settlement; (6) "the nature and breadth of releases to be obtained by officers and directors"; and (7) "the extent to which the settlement is the product of arm's length bargaining."

*In re Iridium Operating LLC*, 478 F.3d at 462 (quoting *In re WorldCom, Inc.*, 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006)).

The Objecting Parties do not challenge the merits of the Settlement Agreement. Applying the *Iridium* factors to the Settlement Agreement, the Court finds that the agreement is "fair and equitable," and does not fall below the lowest point in the range of reasonableness.

Factors One and Two weigh the future benefits of the Settlement Agreement against the likelihood of success in the Adversary Proceeding, in light of the complexity and protracted nature of the potential litigation. The future benefits of the Settlement Agreement are certain and clear. ZEK has agreed to make a cash payment of $995,000 and to waive its $483,310.98 unsecured claim in this case. Moreover, in reaching the agreement, the Trustee realized the additional benefit of avoiding the incurrence of fees and expenses associated with the argument of the Motion to Dismiss and, potentially, the trial of the Adversary Proceeding. It is undisputed that those fees and expenses easily could exceed $300,000. Motion ¶ 47.

In contrast, the likelihood of success in the Adversary Proceeding is uncertain; there are clearly litigation risks attendant to the prosecution of the malpractice claims. As the Trustee notes, in the ZEK Motion, ZEK challenges the adequacy of the Complaint, contending that for each malpractice claim asserted in the Prepetition Actions, the Trustee fails to allege with specificity, the essential elements of a malpractice cause of action, including cognizable negligence, "but for" causation and damages. *Id.* ¶¶ 17, 20, 24, 27. ZEK also contends that all of the malpractice claims are time-barred and that there is no basis for equitable tolling of the statutes of limitation. *Id.* ¶¶ 17, 19, 23, 26. In determining to settle the claims described in the Settlement Agreement, the Trustee considered the various potential litigation risks raised by ZEK. *Id.* ¶ 44. With the assistance of counsel, the Trustee determined that there was some risk those arguments could prevail on one

or more of the alleged claims asserted in the Prepetition Actions. *Id.* To that end, she acknowledged that application of the "continuous representation doctrine" is fact driven such that even if she overcame ZEK's defense at the pleading state, there is some risk that ZEK could prevail in the future at summary judgment or at trial. *Id.* ¶ 45. The Court finds that application of Factors One and Two weigh in favor of granting the Motion.

In applying Factors Three and Four, the Court considers the paramount interest of creditors and the extent of support for the settlement by parties-in-interest, respectively. The Trustee asserts that nearly million-dollar cash payment coupled with the uncertainty of success in the litigation of the malpractice claims, strongly counsel that the settlement is in the best interests of the estate's creditors. She asserts that the interests of creditors are served by the Settlement Agreement because it both secures a significant cash payment and avoids burdening the estate with the costs of litigation. *Id.* ¶¶ 46-47. The Supporting Parties agree. The Objecting Parties do not object to the Trustee's business judgment or the reasonableness of the Settlement Agreement, nor challenge the economics of the agreement. Factors Three and Four weigh in favor of granting the Motion.

In Factor Five, the Court considers the "competency and expertise" of the Trustee and her counsel. The Trustee has served as a chapter 7 trustee for over 15 years in more than 2,000 cases. With the assistance of her counsel, she has settled hundreds of contested matters and adversary proceedings within those cases. *Id.* ¶ 2. She brought that experience to bear here. This factor weighs in favor of granting the Motion.

In applying Factor Six, the Court considers the nature and breadth of the releases under the Settlement Agreement. The Trustee asserts that the releases under the Settlement Agreement are appropriate and narrowly tailored. *Id.* ¶¶ 49-50. She points to district court litigation initiated by REI (the "REI Action"), to which the Orly Trust assigned certain other malpractice claims, that

REI asserts arise from the $32.3 million settlement of certain claims asserted in a New York state court action captioned *Orly Genger in her individual capacity and on behalf of The Orly Genger 1993 Trust v. Dalia Genger*, No. 651089/2010 (Sup. Ct. N.Y. Cnty.). *Id.* ¶ 49. The Trustee asserts that there "may be a basis in which the Trustee could have attempted through the Settlement Agreement to enjoin the REI Action as a potential asset of the bankruptcy estate for ultimate distribution to creditors in the case." *Id.* ¶ 50. However, to expedite a settlement, the Trustee "purposely exclude[d] the REI Action from the Mutual Release provisions" and left ZEK to defend itself in the REI Action. *Id.* She asserted that "if the Settlement Agreement is approved with no contested issues, the Trustee will not seek a recovery in the REI Action for this estate." *Id.*[22] Given the unique posture of the Genger litigations, and the litigiousness of various parties in this case and in other actions, the assurances granted by the Settlement Agreement against future litigation are appropriate. The releases granted by the Settlement Agreement are narrowly tailored. This factor weighs in favor of granting the Motion.

In applying Factor Seven, the Court considers the extent to which the Settlement Agreement is the product of arm's length bargaining. The Settlement Agreement is the product of the mediation conducted by Judge Gropper, a highly skilled mediator. His efforts "formed the framework for the settlement ultimately reached by the Parties after further numerous communications between the Parties." *Id.* ¶ 42. The Trustee also "relied on her counsel's investigation and feedback from successor counsel to ZEK." *Id.* The Trustee's investigation, and

---

[22] The Trustee also seeks a "comfort order" preventing the Debtor and her descendants from asserting a claim against ZEK to prevent future litigation against ZEK. Motion ¶ 54. Although the Debtor has declined to sign the Settlement Agreement, the Trustee represents that the Debtor does not intend to take further action against ZEK. *Id.* ¶ 53.

the Mediator's fruitful assistance demonstrate that the Settlement Agreement is the product of arm's length bargaining.

Application of the *Iridium* factors weighs in favor of approving the Settlement Agreement.

**The Trustee's Authority to Settle the Derivative Malpractice Claims**

In the 2008 and 2014 Actions, ZEK represented Orly in her individual capacity as plaintiff and defendant, respectively. In contrast, and as relevant here, in the 2009 Action, ZEK represented Orly as plaintiff suing Sagi and others in her individual capacity and on behalf of the Orly Trust and D&K LP, asserting standard and double derivative claims, respectively. Specifically, Orly brought derivative claims against the defendants on behalf of the Orly Trust, in her capacity as the trust's beneficiary. She also asserted double derivative claims on behalf of D&K LP, acting in her capacity as the beneficiary of the Orly Trust, which holds a 48% interest in D&K LP.

Orly's claims in the 2009 Action included those that affected her in her capacity as beneficiary of the Orly Trust. She asserts that she "is the beneficiary of the Orly Trust" which "is a limited partner of [D&K LP]." 2009 Action Complaint ¶ 7.[23] She alleges that "[a]s a result of Sagi's self-dealing and Dalia's failure to act in the best interests of the Orly Trust, D&K [LP's] only asset - its ownership interest in TPR - was transferred to TPR" and as a consequence, "[t]he Orly Trust's interest in D&K [LP] is now worthless." *Id.* ¶ 71. She complains of:

(i)     The loss of the Orly Trust's indirect ownership interest in TPR, *id.* ¶ 2;

(ii)    The risk of foreclosure on the Orly Trust's shares in Trans-Resources, Inc. due to a manufactured deficiency under a promissory note that was allegedly never meant to be enforced, *id.* ¶ 3; and

(iii)   Dalia Genger and Sagi's "looting" of the Orly Trust, *id.* ¶ 1.

---

[23] *Second Amended Verified Complaint*, 2009 Action, NYSCEF No. 83 ("2009 Action Complaint").

The Complaint's allegations about the 2009 Action malpractice thus focus on claims that Orly could have pleaded only derivatively for the Orly Trust. The Trustee claims that TPR was highly profitable, receiving "tens of millions of dollars from a third party in connection with the sale of the shares it owned in another company" around 2008. Complaint ¶ 13. Despite this, Sagi allegedly "paid himself millions from TPR while distributing virtually nothing to Orly despite her equal ownership stake in the company." *Id.* But instead of pursuing these potentially valuable claims, ZEK focused on other claims against Sagi in the 2009 Action. *Id.* However, Orly's right to distributions of TPR was not an individual one; it was a right she held indirectly, if at all, as a result of her beneficial interest in the Orly Trust. Therefore, if Orly sought to sue ZEK for its negligent failure to plead claims based on Sagi's self-dealing, she could only do so derivatively on behalf of the Orly Trust. The Court considers whether the Trustee has such authority.

The Objecting Parties complain that the Settlement Agreement purports to release malpractice claims stemming from the derivative claims in the 2009 Action that the Trustee has no authority to settle. They object to the Motion to the extent the Settlement Agreement would pay the Cash Settlement Proceeds allocable to the malpractice claims stemming from the derivative claims to the Trustee and not to the Orly Trust or D&K LP, as the real parties in interest. D&K Objection ¶¶ 5-6, 15-19; Orly Trust/REI Objection at 2-3. They assert that the Court cannot approve the settlement of those malpractice claims unless (i) the real parties in interest (i.e., the Orly Trust or D&K LP) ratify the Settlement Agreement, and (ii) this Court determines which portion of the Settlement Cash Proceeds is attributable to the real parties in interest in the Prepetition Actions. D&K Objection ¶¶ 11, 19; Orly Trust/REI Objection at 2-3. They request that the Court direct a hearing to determine the proper allocation of the Settlement Cash Proceeds

among the claims at issue in the Prepetition Actions, and deny the Motion to the extent inconsistent therewith.

As the estate's representative, the Trustee can sue, be sued, and settle suits on the estate's behalf. *In re Smart World Technologies, LLC,* 423 F.3d 166, 174-75 (2d Cir. 2005) (citing 11 U.S.C. § 323(b); 7 Collier on Bankruptcy ¶ 1107.02[3][a]). This power is one that is fundamental to the Trustee's role in managing the estates. However, the extent of a trustee's authority to settle claims depends on which claims the bankruptcy estate possesses. *Cf. Grubin v. Rattet (In re Food Mgmt. Grp., LLC),* 380 B.R. 677, 693 (Bankr. S.D.N.Y. 2008) (in context of *Wagoner* rule, explaining that "it is well settled that a bankruptcy trustee generally . . . may only assert claims held by the bankrupt corporation").

Thus, the issue here is the scope of what the Trustee is purporting to settle.[24] The Trustee says that in the Adversary Proceeding, she is asserting claims on behalf of the Debtor's estate individually against ZEK for damages to Orly occasioned by ZEK's alleged malpractice in the

---

[24] The Trustee and Supporting Parties contend that the Objecting Parties waived any right to object to the Settlement Agreement. The Trustee argues that to the extent D&K LP actually believed that ZEK committed malpractice in prosecuting the 2009 Actions, it was incumbent upon D&K LP to sue ZEK for malpractice before the expiration of the statute of limitations, yet it failed to do so. Trustee Reply ¶ 10. Further, the Trustee and Supporting Parties assert that the Objecting Parties did nothing to assert a claim in the Adversary Proceeding. Specifically, none of the Objecting Parties: (i) is a party in the Adversary Proceeding; (ii) intervened in the Adversary Proceeding; (iii) attended the Mediation; or (iv) had a role in negotiating a final settlement with ZEK. Trustee Reply ¶ 4; ADBG Response at 2-3; *see* Herschmann/KBT Response ¶¶ 5-6 (arguing that the purported trustee of the Orly Trust is a nonparty to the adversary proceeding, never asserted claims against ZEK, has no privity with ZEK, and cannot interfere with or intercept settlement proceeds).

The Objecting Parties' failure to previously assert rights to recoveries from a malpractice action against ZEK does not bar their objections to the Settlement Agreement. The agreement represents the first instance where the Objecting Parties became aware that their potential claims might be settled in the Adversary Proceeding. It is unreasonable to expect the Objecting Parties to have raised objections about the settlement of claims that they say belong to them before they had notice of the terms of such a settlement. Moreover, the fact that they acted only in response to the Motion does not bear on the resolution of the issue at hand: whether the Trustee has the authority to settle claims that may not belong to the Debtor's estate.

The Trustee also notes that the Debtor listed the then-potential cause of action against ZEK for malpractice as an asset in her schedules. Trustee Response ¶ 5. She says that none of the Objecting Parties, or their principals, ever suggested to this Court that they maintained some right to a recovery from a malpractice action by the Trustee against ZEK. However, she has not demonstrated why, under the circumstances of this case, they had a duty to do so.

Prepetition Actions. Trustee Reply ¶ 8.[25] As explained above, she is only partly correct. Some of the claims that the Trustee is seeking to settle, as set out in the Complaint, are those that injured, if anyone, the Orly Trust, and not Orly individually.

The Trustee also says that the Settlement Agreement does not resolve derivative claims, but merely resolves a claim arising in the Adversary Proceeding against ZEK. *Id.*[26] In fact, the Settlement Agreement purports to resolve Orly's claims against ZEK for malpractice arising out of the derivative claims in the 2009 Action. The Settlement Agreement purports to release claims relating to, arising from, or concerning any representation by ZEK and ZEK Lawyers on behalf of the Debtor individually or as a beneficiary of the Orly Trust, and of the Orly Trust individually or as limited partner of D&K LP. Settlement Agreement § 7(b). The agreement clarifies that "the release granted herein by the Trustee, . . . is intended to . . . prohibit and bar the Debtor and any one [sic] acting on the Debtor's behalf or as assignee of the Debtor, from asserting any claim . . . . [Such claims include those] relating to, arising from, or concerning any representation by ZEK or ZEK Lawyers of the Debtor individually or as a beneficiary of the [Orly] Trust; claims relating to,

---

[25] The Settlement Agreement does not pertain to or purport to settle the claims at issue in the 2009 Action. Those claims were resolved at the trial court level years ago, and the resolution became final pursuant to a ruling in 2022 by the New York Appellate Division. *Genger v. Genger*, 174 N.Y.S.3d 60 (App. Div. 2022). As relevant to the Objections, the Settlement Agreement concerns ZEK's alleged malpractice in prosecuting the derivative claims in the 2009 Action.

[26] The Trustee and Herschmann/KBT both assert, in essence, that the Adversary Proceeding purports to resolve malpractice claims against ZEK for their representation of Orly individually, who personally paid nearly $6 million in legal fees. Trustee Reply ¶ 9; Herschmann/KBT Response ¶ 3. However, the Settlement Agreement purports to do more than settle Orly's individual claims; it purports to settle claims against ZEK stemming from its representation of Orly individually and derivatively on behalf of the Orly Trust and D&K LP.

The suggestion that Orly's payment of ZEK's legal fees makes the action an individual one appears to be wrong. In *Glaubach v. Miller*, the plaintiff brought derivative claims as a shareholder on behalf of the company. *Glaubach v. Miller*, No. 161605/2019, 2021 WL 755522, at *1 (N.Y. Sup. Ct. Feb. 26, 2021). He later sued the attorneys for legal malpractice. *Glaubach v. Miller*, 154 N.Y.S.3d 775, 776 (App. Div. 2021). The Appellate Division held that the claim belonged to the corporation and, to the extent the plaintiff could assert that claim, he could do so only derivatively. *Id.* His payment of the legal fees did not confer upon him standing to maintain the claim. *Id.*

arising from, or concerning any representation by ZEK or ZEK Lawyers of the [Orly] Trust, individually or as limited partner of D & K Limited Partnership." Settlement Agreement § 7(c).

It has long been the case that when "success crowns his effort," a derivative plaintiff is not entitled to retain the direct benefits of his derivative action because the derivative plaintiff sues only nominally in his own name, but actually on behalf of the entity who has been injured. *Clarke v. Greenberg*, 71 N.E.2d 443, 445 (N.Y. 1947). In *Clarke*, the defendants brought a shareholder derivative action on behalf of Associated Gas & Electric Company ("AGECO"), alleging that the company's directors had mismanaged its affairs. *Clarke*, 71 N.E.2d at 444. The parties settled the action without giving notice to other stockholders or receiving court approval, in exchange for $9,000. *Id.* The plaintiff filed a complaint alleging that the defendants received the settlement money "to the use of, and in trust for AGECO" and sought to recover the settlement money. *Id.* The New York Court of Appeals reversed, holding that "a plaintiff in a stockholder's derivative action may be required to account to the corporation for moneys received in private settlement for discontinuance of the action." *Id.* at 444. The court reasoned that a derivative suit "belongs primarily to the corporation, the real party in interest" and that "a judgment so obtained, as well as the proceeds of a settlement with court approval belongs to it and not the individual stockholder plaintiffs." *Id.* at 444-45.

The court explained that when the stockholder-plaintiff succeeds, "the amount received is in behalf and for the account of the corporation" because "the action belongs primarily to it." *Id.* The court concluded that "[r]equiring an accounting for moneys received in a private settlement introduces no new element" but "simply amounts to a logical application of a fundamental principle inherent in the representative relation." *Id.* Consistent with *Clarke*, in *Stevens v. McGuireWoods LLP*, the Illinois Supreme Court found that the plaintiffs could not maintain a legal

malpractice action against the defendant law firm McGuireWoods for its failure to timely assert derivative claims on behalf of a limited liability company (the "LLC") in which the plaintiffs were formerly minority shareholders. *Stevens v. McGuireWoods LLP*, 43 N.E.3d 923, 928-30 (Ill. 2015). The plaintiffs brought derivative claims on behalf of the LLC against its corporate counsel, Sidley Austin, but they were dismissed as untimely. *Id.* at 925-26. Then, the plaintiffs sued McGuireWoods for malpractice for failing to timely file those derivative claims against Sidley Austin. *Id.* at 926.

The Supreme Court of Illinois held that the plaintiffs could not prevail on their malpractice claim against McGuireWoods because, even if McGuireWoods had timely filed the derivative claims and the plaintiffs prevailed, any judgment would have belonged to the LLC, and not to the plaintiffs individually. *Id.* at 928. The court explained that "derivative claims always and only belong to the corporation on whose behalf they are brought, and any damages awarded in a derivative suit flow exclusively and directly to the corporation, not to the nominal plaintiffs." *Id.*[27]

The Trustee and Supporting Parties do not dispute that a derivative plaintiff is not entitled to retain the direct benefits of its derivative action and the Trustee cannot settle claims that belong to the Orly Trust or D&K LP. Yet, as explained above, that is what the Trustee purports to do through the Settlement Agreement. The Trustee has not demonstrated that she has authority to settle malpractice claims stemming from ZEK's derivative representation of the Orly Trust and D&K LP. On those claims, the Orly Trust and D&K LP are the real parties in interest, and the

---

[27] At oral argument, ADBG and the Trustee suggested that New York differs from Illinois law in that it would allow Orly to recover for ZEK's alleged malpractice because she funded the derivative suit. As the Orly Trustee noted during oral argument, this is probably an inaccurate statement of law given the Appellate Division, First Department's holding, described above, in *Glaubach v. Miller* that an individual suing derivatively on behalf of a corporation who paid legal fees did not, because of that payment, have nonderivative standing to maintain a malpractice claim. 154 N.Y.S.3d 775, 776 (App. Div. 2021).

Court will not permit the Trustee to enter an agreement to settle claims that she has no right to

settle. However, settlement of derivative claims or not—as discussed above, the Settlement

Agreement clearly is a reasonable compromise that provides significant benefits to the estate. But

it is equally clear that the parties to the agreement have not appreciated the limits of the Trustee's

authority.

The Court is prepared to grant the Trustee authority to enter a substantially similar

settlement agreement with ZEK. The Trustee may covenant that it will not, on behalf of Orly,

assert derivative claims against ZEK, but the Trustee may not agree to release claims that Orly

could not have released on her own behalf.

**The REI Action**

The Orly Trust argues that the action should be allowed to proceed because it is not subject

to the automatic stay in the bankruptcy case.[28] It explains that the REI Action stems from the 2010

Action, in which ZEK represented Orly Genger in derivative claims brought on behalf of the Orly

Trust. Orly Trust/REI Objection ¶ 5. In 2019, REI, having been assigned the claim by the Orly

Trust, filed an action based on ZEK's alleged malpractice related to its representation of Orly on

those derivative claims (i.e., the REI Action).

The Orly Trust's argument is based on the Trustee's admission that she does not assert any

claim to proceeds or seek to enjoin the REI Action. *Id.* ¶ 7. Given that the Settlement Agreement

explicitly carves out the REI Action, states that neither the Trustee nor the Debtor will attempt to

---

[28] The Orly Trust filed a motion to confirm that certain actions were not subject to the automatic stay. *Motion of the Orly Genger Trust, by Its Trustee Michael Oldner, Recovery Effort, Inc., and Manhattan Safety Maine, Inc. for the Entry of an Order Confirming That the Automatic Stay Does Not Apply to Certain Non-Bankruptcy Litigations*, ECF No. 258-1. That motion sought the Court's confirmation that the REI Action, and another action not relevant here, were not stayed by the bankruptcy proceedings. The motion argued that the automatic stay did not apply to these actions because the Debtor is not a party to them and they will not affect the bankruptcy estate.

monetize or benefit from the REI Action, and states that it does not release any claims or defenses asserted by the plaintiff in the REI Action, the Orly Trust contends that the Court can now grant—or dismiss as moot—the motion seeking confirmation that the REI Action is not stayed by the bankruptcy case. *Id.* The Orly Trust emphasizes that there is no reason for the REI Action to be delayed any longer by the bankruptcy, especially now that the Trustee seeks authorization to enter an agreement that explicitly disclaims control over the REI Action. *Id.*

The Trustee disagrees. She explains that she could have potentially sought to enjoin the REI Action as property of the estate, but chose not to do so in favor of reaching a straightforward settlement with ZEK. Motion ¶ 50. She argues that the Settlement Agreement's silence regarding the Stay Motion does not indicate that she consents to the REI Action proceeding. Trustee Reply ¶ 13. Rather, she claims that the Settlement Agreement would merely establish that the Trustee will not interfere with ZEK's defense or seek to profit from the REI Action. *Id.*

The Trustee acknowledges that one reason for having originally objected to the Stay Motion—the need to investigate whether the REI Action was a potential estate asset—is no longer applicable if the ZEK Settlement is approved without changes. *Id.* ¶ 15.[29] However, the Trustee argues that the REI Action should be stayed for other reasons. *Id.*

First, the Trustee argues that allowing the REI Action to proceed could create confusion and inconsistent findings with the Court's pending decision on a so-called "global" settlement motion in the main case. *Id.* ¶¶ 16-17. The Trustee argues that until the Court rules on that settlement motion, the REI Action should remain stayed to avoid potential complications and

---

[29] *See Chapter 7 Trustee's Objection to Motion of the Orly Genger Trust, by Its Trustee Michael Oldner, Recovery Effort, Inc., and Manhattan Safety Maine, Inc. For the Entry of an Order Confirming That the Automatic Stay Does Not Apply to Certain Non-bankruptcy Litigations*, ECF No. 274.

attempts to introduce new evidence from the REI Action into the global settlement motion's closed record. *Id.* ¶ 17.

The Trustee also raises a "concern" about the potential impact of a judgment in the REI Action on the bankruptcy case. *Id.* ¶ 18. The Trustee notes that the Orly Genger Trust has filed a $41 million proof of claim in the bankruptcy proceedings. *Id.* The Trustee explains that a judgment for REI in the REI Action would "be used in support of the inflated $41 million proof of claim in this bankruptcy case," while acknowledging that "[p]rinciples of res judicata and collateral estoppel would seem to prevent this concern." *Id.*

The Trustee also characterizes REI's standing as a proper plaintiff in the malpractice action against ZEK as "unclear." *Id.* ¶ 19. Essentially, the Trustee alludes to questions surrounding the authority of Michael Oldner, who serves as both the president of REI and the purported trustee of the Orly Genger Trust. *Id.* If Oldner's authority is successfully challenged, such a judgment could invalidate REI's standing to pursue the malpractice claims. *Id.*

The Orly Trust may pursue the REI Action. At the heart of the issue is whether the claims that REI seeks to litigate in the REI Action belong to the Trustee. The Trustee has failed to offer a plausible argument why the claims underlying the REI Action are estate property. To the contrary, she explains that she supported staying the REI Action because she "needed to ascertain whether the REI Action was potentially an asset of the estate," but "[a]fter completing her investigation and as a result of the negotiations leading to the ZEK Settlement, the Trustee has decided it [sic] will not attempt to monetize the REI Action for the benefit of the estate." *Id.* ¶ 15. The Trustee's pragmatic justification for not pursuing the REI Action says nothing about whether it is estate property. Moreover, her suggestion that "the Trustee also has left to ZEK to capably defend itself [sic] in the REI Action," implies that the Trustee does not view the claims in the REI Action as

belonging to the estate, because otherwise the action must be enjoined as an "act to . . . exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

Without an argument that the claims in the REI Action belong to the estate, the Trustee relies on several other reasons why the Court should enjoin the REI Action. First, the Trustee's argument that the REI Action could create confusion and inconsistent findings with the Court's pending decision on the settlement motion in the main case is unconvincing. The Court has no reason to enjoin another action simply because it might result in findings that the Court may need to consider in its own decision.

Second, what effect a judgment in the REI Action might have on the Orly Trust's claim in the bankruptcy, if any, is speculative and not a sufficient reason to support a stay. The Trustee's own acknowledgment that "[p]rinciples of res judicata and collateral estoppel would seem to prevent this concern," *id.* ¶ 18, undermines the argument for maintaining the stay on this basis.

Finally, the Trustee's concerns about REI's standing and Michael Oldner's authority are matters are that can and should be addressed in the REI Action, not here. Unless the Trustee's challenge is whether REI, as represented by Mr. Oldner, has standing to seek the Court's confirmation that the automatic stay does not apply to the REI Action—which is not the case—the Court is unconcerned with whether the purported agent of a third party pursuing that entity's claims outside of this court is with authority to act on its behalf. If there are legitimate challenges to Mr. Oldner's authority, those challenges can be raised and adjudicated in the REI Action.

**<u>Conclusion</u>**

The Court denies the Motion and finds that the REI Action is not subject to the automatic stay.

IT IS SO ORDERED.

Dated: New York, New York
        September 30, 2024

/s/ *James L. Garrity, Jr.*

Honorable James L. Garrity, Jr.
United States Bankruptcy Judge

27